Mark Clayton Choate, Esq., AK #8011070
CHOATE LAW FIRM LLC
424 N. Franklin Street
Juneau, Alaska 99801
Telephone: (907) 586-4490
Facsimile:  (907) 586-6633

Attorneys for Plaintiff(s)

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA AT JUNEAU**

| | |
|---|---|
| ANDREA IVERSON, D.C., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| UNUM GROUP CORPORATION aka, ) | |
| PROVIDENT UNUM; PAUL REVERE ) | |
| LIFE INSURANCE COMPANY; and ) | |
| NEW YORK LIFE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | Case No. _____ |
| ) | |

**COMPLAINT**

COMES NOW the Plaintiff, ANDREA IVERSON, D.C. ("IVERSON") by and through

her attorneys, the Choate Law Firm LLC, and for causes of action against the defendants,

UNUM GROUP CORPORATION aka UNUM PROVIDENT CORPORATION ("UNUM"),

PAUL REVERE LIFE INSURANCE COMPANY ("PAUL REVERE") and NEW YORK

LIFE INSURANCE COMPANY ("NEW YORK LIFE") alleges as follows:

**VENUE and JURISDICTION**

1.      At all times relevant, Plaintiff IVERSON (maiden name Guernsey) was and is a

resident of Juneau, Alaska.

2.      Defendant UNUM is a foreign corporation engaged in the business of providing

occupation specific disability insurance nationally and in the State of Alaska.

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska  99801
(907) 586-4490

*Iverson, Andrea v. UNUM Group Corporation [30119].*
COMPLAINT

1

2

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

3.      Defendant PAUL REVERE is a foreign corporation engaged in the business of providing occupational specific disability insurance nationally and in the State of Alaska.

4.      Defendant NEW YORK LIFE is a foreign corporation engaged in the business of providing occupation specific disability nationally and in the State of Alaska.

5.      UNUM is the parent company for PAUL REVERE.

6.      PAUL REVERE is the administrator for New York Life Insurance Company.

7.      The insurance policy that is the subject of this action was issued in Alaska.

8.      With respect to all claims, this Court has subject matter jurisdiction pursuant to U.S.C. 1332.  The matter in controversy arises from the DEFENDANTS' breach of contract and bad faith denial of the full value of disability benefits to IVERSON and exceeds, exclusive of interest and costs, the sum of $100,000.00.

**FACTUAL ALLEGATIONS**

9.      In early 1990 Plaintiff Iverson, a licensed chiropractor, was interested in obtaining disability insurance coverage to replace her income as a chiropractor should she become unable to work due to injury or illness.  Defendants' agent, Neal Littlejohn, expressly warranted that the disability insurance provided by Defendants would provide coverage for her lost chiropractic income if she was unable to perform the customary duties of a chiropractor.  Based on those representations, Plaintiff completed an application for disability insurance.  NEW YORK LIFE accepted that application to obtain total disability insurance from Plaintiff IVERSON through its agent Neal Littlejohn.

10.     Upon receipt of said application Defendants, and each of them, undertook an investigation of IVERSON to determine whether they would qualify her for coverage.

11.     On or about February 13, 1990, Defendants issued an occupation specific disability insurance policy, policy # H3 144 180, to IVERSON to provide benefits of $4,000 per month in the event she became become totally disabled from  performing the duties of her occupation as a chiropractor.

12.     Defendants issued said policy, stating specifically the policy being issued was based upon the following representations, to wit:

Proposed Insured:  Andrea S. Guernsey, D.C., a sole proprietorship

2 of 8

*Iverson, Andrea v. UNUM Group Corporation [30119].*
COMPLAINT

**CHOATE LAW FIRM LLC**
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

Occupation:    Chiropractor

Years in Business:  5

Other Occupations:  None

Elimination Period:    60 days

No Contestability beyond 2 years: "We have no right to contest the insurance provided by this policy after it has been in force during the lifetime of the insured for 2 years from the policy date, except for a disability which starts before the end of those 2 years.

13.    Defendants charged IVERSON annual premiums from 1990 through 2005 all of which were timely paid by Plaintiff.

14.    Beginning in 2003 continuing through 2005 IVERSON worked part-time seasonally as a documents clerk in the print department while the Alaska Legislature was in session each year in order to qualify for lifetime medical coverage through the State of Alaska's retirement and benefits system.  IVERSON'S job description as a documents clerk is attached hereto as Exhibit A.  The document clerk's position has as its minimal qualification a high school diploma or equivalent and was limited to the legislative session (at that time 120 days)  with a monthly salary of $2,864.  Based upon a 37.5 hour work week, IVERSON was earning approximately $16.71 per hour.  This was not Plaintiff's "occupation".  The main benefit to her working during the legislative session for the State of Alaska was to meet vesting requirements for life time medical benefits.

15.    IVERSON's earnings history supports her occupation was as a chiropractor:

| Year | Chiropractic Earnings | Other Earnings |
|------|----------------------|----------------|
| 2000 | $96,130.00 | 0 |
| 2001 | $77,037.00 | 0 |
| 2002 | $86,065.00 | 0 |
| 2003 | $78,838.00 | $6,418.48 |
| 2004 | $59,185.00 | $5,020.67 |
| 2005 (injury 4/9/05) | $20,023.00 | $11,742.25 |

3 of 8

*Iverson, Andrea v. UNUM Group Corporation [30119].*
COMPLAINT

**CHOATE LAW FIRM LLC**
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

16.    IVERSON's injuries:  On or about April 9, 2005 Iverson was participating in a motorcycle safety course when her motorcycle locked up causing Iverson to suffer a fractured left wrist, specifically a comminuted intra-articular left distal radius fracture.  Her treating physician advised her that she would have a prolonged period before recovery and estimated 6-12 months of disability.  She was specifically restricted from forceful grasping, pinching, pulling and lifting over 50 pounds.  Needing both hands to perform the maneuvers as a chiropractor, she was unable to continue working.

15.    The subject disability policy required a 60 day elimination period. Thus IVERSON was eligible to receive benefits as of June 10, 2005.

16.    DEFENDANTS failed to provide any disability benefits to IVERSON until September, 2005, an additional 90 days beyond her elimination period.

17.    IVERSON worked as a part-time, seasonal, documents clerk January-June 2006 with earnings as follows:

| | |
|---|---|
| January, 2006: | $2,580.20 |
| February, 2006: | $2,716.00 |
| March, 2006: | $2,716.00 |
| April, 2006: | $2,716.00 |
| May, 2006: | $2,718.13 |
| June, 2006: | $806.08 |

18.    When the legislature recessed in June, 2006 there was no further work for IVERSON.

19.    IVERSON was not released to return to work until the end of October, 2006. She was totally unable to work as a chiropractor for a period of 20 ½ months.

20.    As insurance companies, DEFENDANTS, and each of them, owed a fiduciary duty to its policy holders, including, but not limited to Plaintiff, IVERSON.

21.    Under the Fiduciary Prinicpal, "an insurance company holds funds of its insured (the payment of premiums) in trust, and through an 'insuring agreement' promises to make all

4 of 8

*Iverson, Andrea v. UNUM Group Corporation [30119].*
COMPLAINT

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

benefit payments for which it has received premiums.  Unlike ordinary businesses, an insurer's desire to maximize profits can never be its primary operating goal.  Therefore the insurer's desire to maximize profits must be secondary to its fiduciary duty to promptly and fairly distribute the claim fund to the claimants, such as IVERSON, for whose benefits the contract of insurance was initially made.

22.    One year prior to IVERSON's claim for disability benefits, on or about June 25, 2004, the Ninth Circuit Court of Appeal affirmed the trial court's ruling in *Hangarter v. Provident Life & Accident Ins. Co.*, 236 F. Supp.2d 1069 (N.D. Ca.. 2002) setting out in greater detail the conduct by defendant insurers in denying "own-occupation" policies that resulted in the jury's award of bad faith.

23.    Under *Hangarter*, insurers, including Defendants, and each of them, were on notice as follows:

a.  Insurers can no longer cite the Department of Insurance's ("DOI") policy approval, in conjunction with Cal.Ins.Code §10291.5, to avoid application of the California minimum standard for total disability as outlined in *Erreca v. Western States Life Ins. Co.* (1942) 19 Cal.2d 388, and as extended to include own-occupation policies in *Austero v. National Casualty Co.* (1978) 84 Cal.App.3d 1 *overruled on other grounds by Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal. 3d 809, 824 n.7; (*Hangarter*, supra at 1006-1008).

b.  Insurers can no longer argue that they are not liable for awards of future policy benefits upon a finding of bad faith; (*Hangarter*, supra at 1002-1003).

c.  Insurers can no longer deny coverage based on an insured's failed attempts to return to work; upon the insured's ability to perform some but not all of his or her "important duties"; or upon the income that an insured's business may continue to generate, post disability; (*Hangarter*, supra at 1008-1009).

d.  Insurers can no longer use *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire v. Carmichael,* 526 U.S. 137 (1999), to attack an insured's bad faith; (*Hangarter*, supra at 1017-1018) and

*Iverson, Andrea v. UNUM Group Corporation [30119].*
COMPLAINT

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

e. *Hangarter* affirms that a $5 million punitive damages award is consistent with *State Farm Mutual Auto. Ins. Co. v. Campbell* 538 U.S. 408 (2003), *Hangarter* at 1013-1015.

24.    At the time IVERSON became eligible to receive her claimed disability benefits on June 10, 2005 IVERSON was totally precluded from performing her duties as a chiropractor and was not performing any duties as a clerk with the State.

## FIRST CAUSE OF ACTION
### Breach of Contract

.    25.    Plaintiff re-alleges the allegations in paragraphs 1-24 as if fully set forth herein.

26.    Plaintiff IVERSON paid all premiums due under her policy, submitted all proofs of loss required under the policy, and performed all other conditions the policy required her to perform.

27.    "Occupation" is defined by Mirriam Webster as "the principal business of one's life".

28.    Upon information and belief, Defendants would never have issued a $4,000 monthly disability benefits policy to a part-time, seasonal, document clerk earning $16-17 dollars per hour.

29.    At all times prior to her injury, IVERSON'S earnings as a chiropractor ranged between $59,000 and $96,000.

30.    At all times relevant IVERSON sought to protect that earning capacity via the Long Term Disability Insurance Coverage offered by Defendants and paid for by Iverson.

31.    Although eligible to receive benefits beginning June 10, 2005, Defendant did not begin to pay benefits until September, 2005 paying IVERSON full policy benefits of $4,000 per month for the 6 month period June 10, 2005-December 7, 2005.

32.    When IVERSON re-applied for a continuation of her disability benefits, Defendant discovered that she had been working part-time during the legislative session during the past 2 years and determined her part-time employment as a "documents clerk" constituted "regular work" under the policy.

*Iverson, Andrea v. UNUM Group Corporation [30119].*
COMPLAINT

CHOATE LAW FIRM LLC
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

1

2

33.    Thereafter, Defendants have refused and failed to pay for the additional time period when IVERSON was unable to work as a chiropractor on a full or part-time basis.

3

4

5

6

34.    IVERSON and the Defendants remain at an impasse over past due benefits she is owed.  IVERSON is claiming past due benefits of $58,000 plus interest thereon.  Defendants, on September 18, 2007 offered IVERSON $15,866.77 for the time frame December 8, 2005 – October 10, 2006, despite the fact that IVERSON was not released to return to work as a chiropractor until the end of October, 2006.

7

8

9

10

11

35.    As a further result of DEFENDANTS' breach of the policy, plaintiff IVERSON was deprived of the full value of the benefits of her insurance coverage, including the timely payments of $4,000 monthly benefits during the pendency of her disability, was forced to initiate litigation resulting in mental anguish and emotional distress, all in an amount in excess of $100,000.00.

## SECOND CAUSE OF ACTION

### Bad Faith

12

13

14

36.    Plaintiff re-alleges paragraphs 1 through 35 as if fully set forth herein.

15

16

37.    In adjusting plaintiff's total disability claim, defendants, through their agents and representatives, defendants, acted unreasonably in denying the full value of her benefit.

17

18

19

20

21

38.    In adjusting plaintiff's total disability claim, defendants, through its agents and representatives, denied plaintiff's occupation specific disability claim without having any reasonable grounds for doing so. Defendants, and each of them, were on notice at least as of the time of the 9th Circuit's affirmation in June 2004 of the *Hangarter* case that such conduct was impermissible.  Defendants knew that they had no reasonable grounds for denying plaintiff's claim.

22

23

24

25

39.    Defendants' conduct was outrageous, and the acts mentioned above were done with malice or bad motives; or evidenced reckless indifference to the interest of the plaintiff. Defendants' conduct warrants an award of exemplary (punitive) damages in an amount to be determined at trial consistent with A.S. § 09.17.020.

26

27

28

7 of 8

*Iverson, Andrea v. UNUM Group Corporation [30119].*
COMPLAINT

40.    Defendants' conduct is a breach of the covenant of good faith and fair dealing, and as a result of that breach, plaintiff has suffered harm as alleged in paragraphs 34 and 35 above.

Therefore, ANDREA IVERSON seeks judgment as prayed for below.

IVERSON prays for judgment against the defendants, and each of them, as follows:

1.  For plaintiff's contractual damages for defendants' breach of the insurance contract including direct and consequential damages.

2.  For plaintiff's tort damages for defendants' breach of the covenant of good faith and fair dealing, including special and general damages;

3.  For exemplary (punitive) damages should the facts as adduced at trial warrant the same consistent with the statutory provisions of A.S. § 09.17.020;

4.  For prejudgment and post-judgment interest at the maximum rate allowed by law;

5.  For plaintiff's attorneys' fees and costs as allowed by law;

6.  For such other and further relief as the Court deems just and equitable.

DATED Friday, February 27, 2009, at Juneau, Alaska.

Respectfully submitted,
CHOATE LAW FIRM LLC


s/*Mark Choate*

_____

MARK CHOATE
424 N. Franklin Street
Juneau, AK 99801
Phone: (907) 586-4490
Fax: (907) 586-6633
EM: lawyers@choatelawfirm.com
AK Bar: 8011070

Attorneys for Plaintiff(s)

**CHOATE LAW FIRM LLC**
424 North Franklin Street
Juneau, Alaska 99801
(907) 586-4490

*Iverson, Andrea v. UNUM Group Corporation [30119].*
COMPLAINT